**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Melvin MORROW, Defendant–
Appellant.**

**No. 02–1390.**

United States Court of Appeals,
Sixth Circuit.

July 15, 2003.

Before NELSON, BOGGS, and COLE, Circuit Judges.

**OPINION**

COLE, Circuit Judge.

Defendant–Appellant Melvin Morrow was sentenced to twenty-four months in prison for violating the terms of his supervised release. Given Morrow's criminal history category of IV, the United States Sentencing Guidelines Manual recommends a sentence of six to twelve months

for the type of supervised release violations at issue here. At Morrow's hearing, the United States stated that its position was that Morrow should not receive any jail time for the violations. Morrow contends that, in sentencing him to twenty-four months' imprisonment, the district court failed to consider properly the statutory factors present in 18 U.S.C. § 3553, and that the sentence was plainly unreasonable.

For the reasons that follow, we **AFFIRM** the judgment of the district court.

## I.

On September 16, 1988. Morrow was convicted in Michigan state court of the felony of assault with intent to rob while armed. On April 25, 1996, Morrow was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Morrow pled guilty to this charge, and was sentenced to a term of thirty-seven months' imprisonment to be followed by three years of supervised release. In addition to the standard conditions of supervision, Morrow's special conditions of supervised release included requiring that he participate in a substance abuse program, mandating that he maintain full-time employment, and noting that the court would consider the conditions of supervised release with a zero tolerance level.

After serving his period of incarceration, Morrow's three-year supervised release term began on January 29, 2001. On March 1, 2002, the district court issued an arrest warrant based on the probation department's report that Morrow had violated several conditions of his release. The violation petition from the probation department alleged four violations of supervised release: (1) failure to participate in substance abuse treatment; (2) failure to serve 180 days in a community sanctions center; (3) failure to maintain full-time employment; and (4) failure to refrain from excessive use of alcohol or use or possession of controlled substances. Morrow admitted guilt to each of these violations.

At the supervised release violation hearing held on March 13, 2002, the Government first noted Morrow's cooperation in an investigation which resulted in the conviction of over sixty gang members. According to the Government, Morrow's cooperation and "role in the investigation was crucial. He did everything he was asked to do and more." The Government went on to note that Morrow is "a very intelligent young man who has made some very stupid choices." that he "has made some strides to turn himself around." that he was "now employed full time," and that "another opportunity for Mr. Morrow would be beneficial both for himself and his family and in many ways for the community."

In his own defense, Morrow asserted that during his time at the community sanctions center, he was given a number of "write-ups" because he would go out looking for jobs and. being unfamiliar with the Detroit area and the public transportation schedule, would sometimes arrive back to the center late. After being told that he would be kicked out of the center if he received any more write-ups, Morrow claims to have gone "a month or two" without incident. Morrow then spoke with his parole officer, and the center agreed to let him go a few weeks early. To celebrate, he drank a beer, and when he was caught with the beer, he left the center because he thought he would get kicked out anyway.

Morrow also explained that his first full-time job after release from prison was at a distributing company. He stated that this

job required twelve to thirteen hours a day, every day, that he had no time to spend with his family or even go to church, and that the work hours were overwhelming for him. However, Morrow did admit that it was a mistake to quit this job without having secured another job. After quitting this job, but before the supervised release violation hearing, Morrow began working full time at McDonald's.

Evidence was also presented to demonstrate that Morrow was currently enrolled in a drug-treatment program and a Michigan job program. In addition to the alcohol consumption, Morrow also twice tested positive for marijuana use. However, the probation department admitted that the tests were convicted in such close proximity to one another that the two positive results may indicate solely one instance of marijuana use.

Morrow's criminal history was a Category IV. Combined with the relevant grade of supervised release violation, the United States Sentencing Guidelines ("Guidelines") recommend an incarceration period of six to twelve months. U.S.S.G. § 7B1.4(a). Despite the Guidelines recommendation and the recommendation of the Government that Morrow not be sentenced to any jail time, the district court sentenced Morrow to twenty-four months in prison.

In so doing, the district court stated that it respected the Government's position that Morrow should not serve any additional time, but disagreed. The district court continued:

> [Morrow] has—his whole life has been one where he's always been on the edge. He's always been on the edge. And a lot of times it's been in very assaultive kinds of situations, A & B's, robberies, things like that. And he just can't ever get around to falling [sic] the rules the way he's suppose [sic] to.... [He] has

not conformed to what society expects. His motivation—he only becomes motivated when under pressure to do something....

> [H]e's got to learn to conform to what society expects. I think if he doesn't that he is both dangerous to himself as well as to the community. And I don't [know] how else to do it other than to give him some incarceration time.

> It will be the sentence of the Court [that] the defendant be committed to the Bureau of Prisons for a period of twenty-four months. And I'll tell you right now why I'm doing twenty-four months. It's twofold: Number one, is anything less than that you will not be able to get into a good rehabilitation drug-alcohol program. And, number two, anything less than that he will not be able to pick up any skills that—even though it's not a lot of time to obtain skills that ... he would need such as job skills and so forth, but I would like to keep his family intact. But I think he's just got to learn that. He's got to be motivated. I don't know how else to do it.

> The Court believes that the guidelines— I should go outside the guidelines as the guidelines are only advisatory [sic] in this particular matter, not mandatory, that I should depart from those since I have some discretion. Generally, I like to have the discretion to go downward rather than upward. But here....

On appeal, Morrow contends that, in imposing a twenty-four month sentence for violations of the conditions of his supervised release, the district court failed to consider the sentencing factors set forth in 18 U.S.C. § 3553 and the Chapter Seven policy statements of the sentencing guidelines. and that the sentence imposed was plainly unreasonable.

## II.

This Court reviews a district court's actions in supervised release cases for an abuse of discretion. *United States v. Webb*, 30 F.3d 687, 688 (6th Cir.1994). The sentence imposed by a district court upon revocation of a period of supervised release will be affirmed if the district court considered the applicable policy statements, the sentence is within the range prescribed by statute, and the sentence is not plainly unreasonable. *United States v. Jackson*, 70 F.3d 874, 878 (6th Cir.1995).

The United States Sentencing Commission has not established guideline ranges, per se, for sentences imposed upon revocation of supervised release, but rather, nonbinding policy statements found in Chapter Seven. "Because there are no binding sentencing guidelines, the district court's sentence must reflect consideration of the factors listed in 18 U.S.C. § 3553, and may not be plainly unreasonable." *Webb*, 30 F.3d at 689.

The factors present in § 3553, which the district court is required to consider, include: (1) the nature and circumstances of the offense and the history of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, to afford adequate deterrence to criminal conduct, to protect the public, and to provide the defendant with needed training or treatment; (3) the kinds of sentences available; (4) the applicable policy statements issued by the Sentencing Commission; (5) the need to avoid unwanted sentence disparities; and (6) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553. In imposing a sentence upon revocation of supervised release, a district court need not engage in a ritualistic incantation of the relevant sentencing factors. nor does it need to make specific findings relevant to each of the factors considered. *United States v.*

*McClellan*, 164 F.3d 308, 310 (6th Cir. 1999). However, "[a]lthough a sentencing court need not recite any 'magic words' explaining whether and how it considered the policy statements contained in the Sentencing Guidelines, or how it weighed the factors set out in 18 U.S.C. § 3553, it must articulate at least enough of its reasoning to permit an informed appellate review." *Id.*

In this case, the district court demonstrated adequate consideration of the § 3553 factors. The district court made references to the circumstances of the offense and history of the defendant, acknowledged the need to protect the public, and noted the need for rehabilitative treatment and skills training. These statements by the district court were sufficient to permit informed appellate review. We therefore find that the district court properly considered the relevant sentencing factors in deciding to impose a twenty-four-month prison term.

Turning to the question of whether the prison term imposed by the district court was "plainly unreasonable," we note that Application Note 4 to guideline 7B1.4 states that an upward departure from the recommended range may be warranted in situations in which the original sentence was a result of a downward departure, as it was for Morrow. U.S.S.G. § 7B1.4 cmt. n. 4. Given this factor, as well as the fact that the district court clearly contemplated Morrow's history and rehabilitative and training needs, we find that the sentence of twenty-four months was not plainly unreasonable.

## III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.